IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** | : | No. 3:04cv938 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **JOHN F. SPALL** and **DEBORAH D'AMICO,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court for disposition is Plaintiff Hartford Fire Insurance Company's Motion for Partial Summary Judgment and Defendant John Spall's Cross Motion for Summary Judgment. For the reasons that follow, we will grant summary judgment for Spall.

**I.    Background**[1]

Defendant John Spall purchased a theft insurance policy ("Policy") from Hartford, and while covered, filed a proof of loss of $ 428,534.12 resulting from a theft committed by Defendant Deborah D'Amico. Following its own investigation, Hartford confirmed that Spall had suffered a loss in the amount of $ 411,262.99, and issued him a check for $150,000, the policy limit, in exchange for an executed Full Release and Partial Assignment ("Release"). After Spall submitted the executed release to Hartford, he accepted a sum of

---

[1] The following facts are undisputed. We will discuss the disputed facts in the discussion section.

$325,000 from D'Amico as settlement for his claim against her.

Hartford subsequently filed the instant action to recover the $150,000 according to the terms of the Policy and Release.  In Count I, Hartford seeks to recover the $150,000 from D'Amico.  In Count II, Hartford seeks to recover $150,000 from Spall pursuant to the Release.  In Count III, Hartford requests that this Court declare the policy void *ab initio* and enter judgment against Spall for $150,000 because he fraudulently concealed his intention to refuse to surrender any portion of a recovery owed to Hartford under the Policy.  In Count IV, Hartford argues that Spall suffered a loss of $411,263 and received a combined recovery from Hartford and D'Amico of $475,000, and thus the Policy requires that Spall remit to Hartford $63,737, the amount of his recovery that exceeded his loss.[2]

**II.    Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  Hartford is a Connecticut corporation with a principal place of business in Connecticut and the defendants are individual citizens of the Commonwealth of Pennsylvania.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**III.   Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to

---

[2] The Amended Complaint also includes a Count V against Spall, but Hartford has represented to this Court that it withdraws its claims in Count V.  (Doc. 39 at 2).

2

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**IV.   Discussion**

Hartford moves for summary judgment on Counts II and III and Spall filed a cross motion for summary judgment on all counts against him.  Hartford presents two principal issues: 1) whether the Release precluded Spall from recovering a payment directly from D'Amico; and 2) whether Spall's total recovery after settlement with D'Amico exceeded his loss, thus requiring that Spall submit the excess recovery to Hartford.  We will address these issues seperately.

**A.   Release and Assignment**

Hartford argues that under the Release, Spall had a duty to direct D'Amico to submit any settlement for her theft to Hartford, and Spall could not recover these sums directly from D'Amico.  We find nothing in the Release that imposes a duty on Spall to decline to accept payment for his loss or precluded him from recovery his excess loss.   The relevant portion of the Release provides:

> (2)   Subject to the "General conditions, Section X "Recoveries" in the policy, the Insured has appointed and does hereby assign, sell, transfer and set over to the Surety, to the extent of the payment referenced above, all its rights, title, and interest in relation to any and all items claimed in and by the said proof of loss, and all money that may be recovered by reason thereof.
> (3)   Subject to the "General conditions, Section X "Recoveries" in the policy, the Insured has appointed and does hereby appoint the Surety as its attorney in fact to ask, demand, receive, receipt for, and sue for in the name of the Insured or Surety, and take any and all lawful ways and means for the recovery of any and all such sums of money at the Surety's expense.

(Pl. Compl. Ex. D).

Section X, ("Recoveries section") referred to above, provides:

4

    **X.**    **Recoveries**

1. Any recoveries, less the cost of obtaining them, made after the settlement of loss covered by this Policy will be distributed
   a. to you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;
   b. then to us, until we are reimbursed

(Pl. Compl. Ex. A).

Finally, the Release was executed pursuant to the following paragraph in the Policy.

    **BB.**    **TRANSFER OF YOUR RIGHTS OF RECOVERY AGAINST OTHERS TO US**
You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must do everything necessary to secure those rights and do nothing after loss to impair them

(Pl. Compl. Ex. A)

The purpose of interpreting an insurance contract is "to ascertain the intent of the parties as manifested by the language of the written instrument." Standard Venetian Blind Co., v. American Empire Insurance Co., 469 A.2d 563, 305 (Pa. 1983). Where the language of the contract is unambiguous, we are "required to give effect to that language." Id. In determining the plain meaning of the language, we must consider the whole policy. Frog, Switch & Mfg. Co. Inc v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). If, however, the term in question is ambiguous, we must construe it "in favor of the insured because the insurer writes the contract." Id. However, "a provision is ambiguous only if reasonable people could, in the context of the entire policy, fairly ascribe differing meanings to it." Id.

We find that the Release unambiguously allowed Spall to recover his excess losses

directly from D'Amico. Hartford's interpretation that Spall completely transferred his right to recover ignores the plain language of the Release, which specifies that Spall transferred his interest solely to the extent of the $150,000 payment. The assignment did not transfer Spall's interest in his entire loss, but only a portion. Thus, Spall retained his interest in his loss to the extent it exceeded $150,000, and the Release and Policy did not prevent him from recovering the excess loss.

Furthermore, Hartford's interpretation cannot be reconciled with provision of the Release explaining that the transfer was "[s]ubject to the 'General conditions, Section X 'Recoveries' in the policy.'" The Recoveries section provides that any recovery must be distributed to Spall until he is fully compensated for his loss, and then to Hartford until it is compensated for his payment. The Release granted Hartford a $150,000 interest in the loss, and thus it could recover no more than this amount from D'Amico. If Hartford recovered its full $150,000 interest subject to the recoveries provision, it was required to submit payment to Spall until he was fully compensated for his loss. This scenario would leave Hartford with no recovery and no remaining interest in the excess loss. Thus, we find that the parties intended that Spall would have the right to recover his excess loss directly from D'Amico, and any recovery would be subject to the recoveries provision.

Our conclusion is supported by principles of subrogation.[3] The purpose of

---

[3] Hartford attempts to avoid the equitable considerations subsumed in the doctrine of subrogation by relying on the language of the Release and arguing that the Release is a contractual assignment, not a subrogation clause. We find this argument unavailing. "The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be

subrogation is to "place[] the subrogee in the precise position of the one to whose rights and disabilities he is subrogated." Id.  A subrogor may maintain an action against the tortfeasor if he was not fully compensated by the amount received by the insurer.  Johnson v. Beane, 664 A.2d 96, 100-101 (Pa. 1995).

> The insured . . . could recover proceeds in excess of the amount it recovered from its insurer either because there was a deductible amount that had not been paid by the insurance company and/or because the full amount of damages arising from the accident had not yet been determined when the insurer remitted payment.

Id. at 101.

Thus, we find that Spall was entitled to recover his excess loss from D'Amico, and we will grant summary judgment for Spall on Count II.

### B.    Recovery Exceeding Loss

Next, Hartford argues that, pursuant to the Recoveries section, Spall must remit the amount of his recovery that exceeded his loss.  Hartford reasons that Spall's proof of loss stated that his loss was $ 428,534.12 but he recovered $475,000.   Spall does not dispute

---

regarded as based upon and governed by equitable principles." Allstate v. Clarke, 527 A.2d 1021, 1024 (Pa. Super. Ct. 1987).  Furthermore, the limited nature of the transferred interest demonstrates that the Release is a subrogation clause.
> Subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment contemplates the continued existence of the debt or claim assigned.  Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim.

Demmery v. National Union Fire Ins. Co., 232 A.2d 21, 23 (Pa. Super. Ct. 1967).  Thus, the Full Release and Partial Assignment is a subrogation clause because it did not transfer Spall's whole claim; it transferred his claim solely to the extent that Hartford made a payment entitling it to contribution or indemnity.

7

Hartford's interpretation of this provision, but has presented his affidavit and his accountant's affidavit swearing that his total loss was at least $603,585.26.

Hartford has produced no evidence on the amount of the loss other than the proof of loss. He argues that Spall should be limited by the doctrine of estoppel, waiver, release, or the mandates of Federal Rule of Civil Procedure 11 from asserting that his loss exceeds the amount attested to in the proof of loss. He also argues that even if Spall is not estopped, the total loss does not exceed the recovery because many of the amounts claimed are specifically excluded from losses covered under the policy. We find that none of the doctrines identified by Hartford preclude Spall from asserting that his loss was greater than the amount identified in the proof of loss, and there is no genuine issue of material fact that the loss exceeded the amount recovered.

1.  **ESTOPPEL/WAIVER/RELEASE**

In order to establish equitable estoppel or implied waiver under Pennsylvania law, it is Hartford's burden to demonstrate that it "relied in good faith upon the position assumed by the opposite party." Goodwin v. Hartford Life Insurance Co., 491 F.3d 332, 334 (3d Cir. 1974). "Stated otherwise, 'the party claiming estoppel . . . (must establish a) . . . lack of knowledge and the means of knowledge of the truth as to the facts in question." Id. Hartford has not demonstrated that it reasonably relied on Spall's proof of loss as representing a comprehensive evaluation of the loss. Spall presented the affidavit of his employee, Joseph R. Rydzewki, who attests that he conducted an investigation into the

amount of the loss. (Doc. 50, Ex. B, Rydzweski Aff. ¶ 1-2). While the investigation was ongoing, he spoke with Hartford representative John O'Gara. (Rydzewski Aff. ¶ 3). O'Gara informed him that Hartford's investigation, based on the materials available up to that point, had established that the loss was at least $411,262.99. (Rydzweski Aff. ¶ 3). Rydzewski informed O'Gara that additional information was available that could demonstrate additional losses, but O'Gara told him not to bother submitting additional information since the loss clearly exceeded the policy limits. (Rydzewski Aff. ¶ 4-5). Therefore, Hartford was on notice that the proof of loss did not state the full amount of the loss, and any reliance on the proof of loss for this purpose was unreasonable.[4] Furthermore, Hartford has produced no

---

[4] Hartford filed a supplemental brief and two accompanying exhibits in an attempt to create a dispute as to whether O'Gara informed Rydzewski that he could cease his investigation, or as Hartford contends, Spall ceased his investigation of his own volition. Hartford presents a letter from Spall's attorney that explains that Spall chose to stop his investigation. We find that this is not a material fact. The issue on estoppel is whether Hartford reasonably relied on the proof of loss as a calculation of Spall's total loss. Whether O'Gara told Rydzewski to cut his investigation short or Spall informed Hartford he had decided on his own to cease the investigation before it was complete, Hartford was on notice that the proof of loss was not a calculation of the total loss, and any reliance upon it for this purpose was unreasonable. The letter submitted by Hartford as supplemental evidence further demonstrate that any reliance on the proof of loss as a calculation of the total damages was unreasonable. In the letter, Spall's attorney specifically states "My client's total loss is still undetermined as he has not obtained from the bank information prior to January 1998." (Doc. 56, Ex. B). Thus, there is no genuine issue of material fact that Hartford was aware that Spall's proof of loss was not a comprehensive estimate of the loss and that any reliance on it for this purpose was not reasonable.

Even if Hartford was never placed on notice, Hartford's reliance on the proof of loss would have been unreasonable. "Substantial compliance as opposed to strict and literal compliance with such provisions is all that is required for an effective proof of loss." Fishel v. Yorktowne Mut. Ins. Co., 385 A.2d 562, 564 (Pa. Super. Ct. 1978). "The purpose of a provision for notice and proofs of loss is to allow the insurer to form an intelligent <u>estimate</u> of its rights and liabilities, <u>to afford it an opportunity for investigation</u>, and to prevent fraud and imposition upon it." Id. (emphasis added). Hartford has produced no evidence that Spall in any way impeded its investigation, and thus, Hartford should have conducted its own full investigation as to the total amount of loss rather than

evidence that it actually relied on the proof of loss or suffered a detriment due to reliance on the amount stated in the proof of loss.  Therefore, we find that Hartford has failed to create a genuine issue of material fact on its estoppel and implied waiver arguments.

Hartford's two other theories to limit Spall's loss are also without merit.  First, he argues that under the Release, Spall released his right to claim that the loss was greater than the amount in the proof of loss.  "The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language *and* interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the partes when the release was given."  Vaughn v. Didizian, 468 A.2d 38, 40 (1994) (internal citations omitted).  "Releases are strictly construed 'so as to avoid the ever present possibility that the releasor may be overreaching.'"  Bowersox Truck Sales & Servs. Inc. v. Harco National Ins. Co., 209 F.3d 273, 280 (3d Cir. 2000).  The release provides:

> The Insured releases and discharges, and forever releases and discharges, the Surety from any and all liability, claims, demands, debts, dues, accounts, causes or causes of action of whatsoever kind or nature that it now has, has had, or may hereafter have under said policy by reason of the aforementioned loss.

(Compl. Ex. D)

Even under the most liberal interpretation, Spall released only his causes of action against Hartford, and he did not release his right to claim his loss exceeded the amount in the proof of loss in recovering from D'Amico or defending a suit filed by Hartford.

---

relying solely on the proof of loss.

Hartford's Federal Rule of Civil Procedure 11 argument is equally without merit. He notes that Spall is an attorney, and thus this rule applied. We disagree. Rule 11 requires that "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party." FED. R. CIV. P. 11(a). The signature certifies that the paper is not being represented to the court for an improper purpose, it contains non-frivolous legal contentions, its factual contentions are supported or supportable, and any factual denials are reasonable. FED. R. CIV. P. 11(b). This application of this rule is clearly limited to the context of federal litigation, and does not apply to every paper an attorney signs.

Thus, we find that none of the doctrines identified by Hartford precludes Spall from claiming in this litigation that his total loss exceeds the amount identified in his proof of loss.

### 2. LOSS EXCEEDS RECOVERY

Spall argues that he is entitled to retain his entire recovery because it does not fully compensate him for his loss, which is over $600,000. He submits affidavits explaining that in addition to the losses outlined in the proof of loss, he incurred losses in the amounts of: a) $72,000 stolen by D'Amico from 1995 to 1998 that was not included in the proof of loss; b) interest on the loss in the amount of $61,000; c) lawyers fees totaling $31,157.74; d) accounting fees of $7,500; e) and office expenses of $10,000.

Hartford argues that the interest, attorney's fees, account's fees, and offices expenses are indirect losses and covered by a Policy exclusion. This issue is irrelevant. The central

issue is whether Spall's $475,000 recovery exceeds his loss. Even discounting the interest, attorney's fees, accountant's fees, and office expenses, the loss exceeded this amount. Spall submitted his affidavit and his accountant's affidavit swearing that the initial loss was $421,927.62. (Spall Aff. ¶ 3(a))  In addition to the initially known loss, he suffered losses of $72,000. (Spall Aff. ¶ 3(b); Def. Ex. C, Jeffrey Webb C.P.A. Aff. ¶ 4)  Hartford has produced no evidence to the contrary.[5]  Thus, even discounting the disputed interest and fees, Spall's loss was $ 493,927.62.[6]  Therefore, we find no genuine issue of material fact that the loss exceeded the recovery, and we will grant summary judgment for Spall on Count IV.

### IV.   Conclusion

For the reasons expressed above, we will grant summary judgment for Spall on Counts II and IV. Hartford has failed to create a genuine issue of material fact either that: 1)

---

[5] Hartford does attack this number in a supplemental brief filed after oral argument, but we find that it raises immaterial issues of fact. First, it questions why this amount was not included in the original proof of loss, but Spall submitted Rydzewski's affidavit explaining that Hartford representative O'Gara explained that further investigation was unnecessary. Hartford then attacks the veracity of Rydzewski's affidavit by arguing that it conflicts with a letter sent by Spall's attorney that states that Spall "chose" to cease the investigation. We find no conflict. Rydzewski explained that after O'Gara informed him that further investigation was unnecessary, he related this conversation to Spall and Spall's attorney, and they told him to cease the investigation. (Rydzewski Aff. ¶ 5-6). Thus, Rydzewski's account is consistent with the statement that Spall chose to cease the investigation and any issue is immaterial.

[6] We recognize that Hartford's investigation concluded that the loss was only $411,263. We find that this evidence does not present a genuine issue of material fact because Spall presented undisputed evidence that Hartford's calculation was not based on all of the evidence, and the additional evidence demonstrates that Spall suffered an additional $72,000 in losses. Thus, adding the $72,000 to Hartford's calculation of the loss at $ 411,263, the total loss is $483,263 and exceeds the $475,000 recovery.

the Release prevented Spall from recovering his excess loss from D'Amico; or 2) Spall's recovery exceeded his losses, thus requiring that he remit the excess to Hartford. The sole remaining claim against Spall is Count III, which asserts that he fraudulently concealed his intent to refuse to surrender any portion of his recovery. Hartford has produced no evidence and Spall's interpretation of the Release and the proof of loss does not evince a fraudulent intent. Therefore, we find that Hartford has failed to create a genuine issue of material fact that Spall intentionally concealed or misrepresented a material fact concerning the policy, and we will grant summary judgment for Spall on Count III as well. Therefore, we grant summary judgment for Spall on all counts against him and will dismiss him from this case. The sole remaining claim is Hartford's claim against D'Amico. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** | : | No. 3:04cv938 |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| **JOHN F. SPALL** | : | |
| **and DEBORAH D'AMICO,** | : | |
| Defendants | : | |

## ORDER

**AND NOW**, to wit, this 3rd day of March 2006, it is hereby **ORDERED** that:

1) Plaintiff's Motion for Partial Summary Judgment (Doc. 38) is **DENIED**;

2) Defendant John Spall's Motion for Summary Judgment (Doc. 48) is **GRANTED**.

3) Defendant John Spall is hereby **DISMISSED** as a defendant in this case.

BY THE COURT:

**s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**